PRESENT: Lemons, C.J., Goodwyn, Millette, Mims, and
McClanahan, JJ., and Lacy and Koontz, S.JJ.

ADAM DARRICK TOGHILL

                                           OPINION BY
v.      Record No. 140414         JUSTICE S. BERNARD GOODWYN
                                        February 26, 2015
COMMONWEALTH OF VIRGINIA


              FROM THE COURT OF APPEALS OF VIRGINIA

     In this appeal, we consider whether Code § 18.2-361(A)[1] is

facially unconstitutional in light of the decision of the

United States Supreme Court in Lawrence v. Texas, 539 U.S. 558

(2003).

                            Background

     Adam Darrick Toghill (Toghill), an adult, engaged in an

email exchange with a law enforcement officer posing as a minor

wherein Toghill proposed that the two engage in oral sex.

Subsequently, Toghill was indicted on charges of Internet

solicitation of a minor in violation of Code § 18.2-374.3.  The

Circuit Court of Louisa County and both parties agreed that

Toghill was accused of soliciting oral sex from a minor, and

that oral sex between an adult and a minor is an act forbidden

by Code § 18.2-361(A).  Toghill was found guilty after a jury

---

[1] The General Assembly amended Code § 18.2-361(A) in 2014
to remove the general provisions forbidding sodomy.  2014 Acts
ch. 794.  However, when this opinion refers to Code § 18.2-
361(A), it is referring to the statute as it existed on March
10, 2011, when the alleged crime was committed, unless denoted
otherwise.

trial, and the court sentenced him to five years' imprisonment. Notably, at trial, Toghill did not argue that Code § 18.2-361(A) was unconstitutional.

Toghill appealed to the Court of Appeals of Virginia (Court of Appeals), arguing that his conviction was invalid because Code § 18.2-361(A) was unconstitutional. To support his position, he cited a recently decided case from the United States Court of Appeals for the Fourth Circuit, MacDonald v. Moose, 710 F.3d 154 (4th Cir. 2013) (Moose), in which the Fourth Circuit ruled that Code § 18.2-361(A) was facially unconstitutional. The Court of Appeals affirmed the circuit court's decision, citing McDonald v. Commonwealth, 274 Va. 249, 645 S.E.2d 918 (2007), in which this Court ruled that Code § 18.2-361(A) was not unconstitutional as applied to sodomy cases involving an adult with a minor. Toghill v. Commonwealth, Record No. 2230-12-2, 2014 Va. App. LEXIS 42, at *6-7 (February 11, 2014). It held that Code § 18.2-361(A) was constitutional as applied to Toghill because the Lawrence decision did not prevent a state from criminalizing sodomy[2] between an adult and

_____

[2] For simplicity, the term "sodomy," as utilized in this opinion, encapsulates all forms of homosexual and heterosexual non-coital sexual activity between humans, including anal and oral sex. See MacDonald v. Moose, 710 F.3d 154, 156, 163 (4th Cir. 2013) (citing Lawrence, 539 U.S. at 563) ("We herein use the term 'anti-sodomy provision' to refer to the [non-bestiality] portion[s] of section 18.2-361(A) . . . . The conduct for which the Lawrence defendants were prosecuted

a minor.  Id.  Toghill appeals.  Toghill assigns error as follows:

> The Court of Appeals erred in holding that Virginia's anti-sodomy law was constitutional, with the result that Toghill was convicted of soliciting a minor to commit an act that was not, in actuality, a violation of Virginia law.

Analysis

Toghill argues that Code § 18.2-361(A) is facially unconstitutional and invalid, and thus his conviction, for soliciting an activity deemed illegal because it violated Code § 18.2-361(A), was void ab initio.  The Commonwealth argues that the Lawrence decision did not facially invalidate Code § 18.2-361(A), because the Supreme Court of the United States implied in its holding that a state could criminalize sodomy in some circumstances, including sodomy involving adults with minors.

As a preliminary matter, the Commonwealth asserts that Toghill's claim is procedurally barred because Toghill failed to raise the issue of the constitutionality of Code § 18.2-361(A) at trial.  Toghill has conceded that he presented this argument for the first time on appeal.

qualified as 'deviate sexual intercourse' in that it amounted to 'contact' between any part of the genitals of one person and the mouth or anus of another person, that is, sodomy."); Webster's Third New International Dictionary 2165 (1993) (providing that the term "sodomy" can be used to mean homosexual and heterosexual non-coital sexual activity broadly).

Rule 5:25 states: "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling."  Our Court has stated that "an appellate court may not reverse a judgment of the trial court based . . . upon an issue that was not presented."  McDonald, 274 Va. at 255, 645 S.E.2d at 921 (holding that the Court could not evaluate a facial challenge to Code § 18.2-361(A) because the appellant never raised a facial challenge in the trial court).  However, Rule 5:25 also states that this Court can review a ruling that was not objected to at trial "for good cause shown or to enable this Court to attain the ends of justice."

Following the Supreme Court decision in Lawrence, this Court had the opportunity in McDonald to consider the continuing constitutionality of Code § 18.2-361(A) in light of Lawrence.  This Court held the statute to be constitutional as applied to oral sex between an adult and a minor.  McDonald, 274 Va. at 260, 645 S.E.2d at 924.

Toghill's trial in the instant case occurred on November 26, 2012.  On March 12, 2013, the Fourth Circuit issued its published opinion in Moose, holding that Code § 18.2-361(A) is facially unconstitutional because it does not pass muster under the standards set by the Supreme Court in Lawrence.  710 F.3d at 166.

4

Despite Toghill's failure to raise the issue at trial, we hold that the conflict created by the Fourth Circuit's subsequent opinion is good cause under Rule 5:25 to consider the error alleged by Toghill regarding the constitutionality of Code § 18.2-361(A).  Our prior cases have not applied the "good cause shown" exception contained in Rule 5:25, but we believe that exception to be applicable in this narrow instance and will apply it sua sponte as has been done with the ends of justice exception.  See Ball v. Commonwealth, 221 Va. 754, 758–59, 273 S.E.2d 790, 793 (1981) (applying the ends of justice exception despite the fact that appellant did not request the Court to consider that issue in his brief); Cooper v. Commonwealth, 205 Va. 883, 889-90, 140 S.E.2d 688, 692-93 (1965) (same).  Thus, we will examine whether, under our jurisprudence, Toghill's conviction is invalid premised on the theory that Code § 18.2-361(A) is facially unconstitutional as a result of the Supreme Court's ruling in Lawrence.

The statute under which Toghill was convicted, former Code § 18.2-374.3(C), stated at the time of the offense that it was a Class 5 felony for an adult to knowingly and intentionally propose to a child under 15 years of age "an act of sexual intercourse or any act constituting an offense under § 18.2-361" using a computer.  Also at that time, former Code § 18.2-361(A) stated "If any person . . . carnally knows any male or

5

female person by the anus or by or with the mouth, or voluntarily submits to such carnal knowledge, he or she shall be guilty of a Class 6 felony."[3]

It is undisputed that Toghill's conviction is based upon the fact that he, using a computer, proposed oral sex to a person he believed to be a child under 15 years old, and that the circuit court ruled that oral sex between an adult and a child under 15 was a criminal offense under Code § 18.2-361(A). In Moose, the Fourth Circuit ruled that Code § 18.2-361(A) does not outlaw oral sex between an adult and a child under 15 because the statute is facially unconstitutional, and thus invalid. 710 F.3d at 166.

While this Court considers Fourth Circuit decisions as persuasive authority, such decisions are not binding precedent for decisions of this Court. See, e.g., Lockhart v. Fretwell, 506 U.S. 364, 376 (1993) (Thomas, J., concurring) ("[N]either federal supremacy nor any other principle of federal law requires that a state court's interpretation of federal law give way to a (lower) federal court's interpretation."); Owsley v. Peyton, 352 F.2d 804, 805 (4th Cir. 1965) (denying that a Fourth Circuit decision alters existing Virginia law and acknowledging that "[t]hough state courts may for policy

---

[3] Both former Code § 18.2-374(C) and former Code § 18.2-361(A), in effect at the time of the offense at issue, appear in the 2009 Replacement Volume containing Title 18.2.

6

reasons follow the decisions of the Court of Appeals whose circuit includes their state . . . they are not obligated to do so"); United States ex rel. Lawrence v. Woods, 432 F.2d 1072, 1076 (7th Cir. 1970) ("[B]ecause lower federal courts exercise no appellate jurisdiction over state tribunals, decisions of lower federal courts are not conclusive on state courts."); Ace Prop. & Cas. Ins. Co. v. Commissioner of Revenue, 770 N.E.2d 980, 986 n.8 (Mass. 2002) (citing Commonwealth v. Hill, 385 N.E.2d 253, 255 (Mass. 1979)) ("Although we are not bound by decisions of Federal courts (other than the United States Supreme Court) on matters of Federal law . . . , 'we give respectful consideration to such lower Federal court decisions as seem persuasive.'"); State v. Coleman, 214 A.2d 393, 402, 403 (N.J. 1965) ("In passing on federal constitutional questions, the state courts and the lower federal courts have the same responsibility and occupy the same position; there is a parallelism but not paramountcy for both sets of courts are governed by the same reviewing authority of the Supreme Court.").

Toghill presents a facial constitutional challenge to Code § 18.2-361(A).  We review questions of statutory constitutionality de novo.  Montgomery Cnty. v. Virginia Dep't of Rail & Pub. Transp., 282 Va. 422, 435, 719 S.E.2d 294, 300 (2011); Covel v. Town of Vienna, 280 Va. 151, 163, 694 S.E.2d

7

609, 617 (2010). Facial challenges are disfavored because they create a risk of "'premature interpretation of statutes on the basis of factually barebones records'"; they "run contrary to the fundamental principle of judicial restraint that courts should neither 'anticipate a question of constitutional law in advance of the necessity of deciding it' nor 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied,'" and they invalidate an entire law that was passed through the democratic process. Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 450 (2008) (citing Ayotte v. Planned Parenthood, 546 U.S. 320, 329 (2006); Sabri v. United States, 541 U.S. 600, 609 (2004); Ashwander v. TVA, 297 U.S. 288, 346-47 (1936) (Brandeis, J., concurring)).

An appellant can only mount a successful facial challenge to a statute by showing first that the statute in question is unconstitutional as applied to him and that the statute in question would not be constitutional in any context. County Ct. of Ulster Cnty. v. Allen, 442 U.S. 140, 154-55 (1979) ("As a general rule, if there is no constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations."); Broadrick v. Oklahoma, 413 U.S. 601, 610 (1973) ("Embedded in the

traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the court."); Woollard v. Gallagher, 712 F.3d 865, 882 (4th Cir. 2013) (applying the rule from Broadrick that a law must be unconstitutional as applied to a party in order for that party to facially challenge the law); Washington State Grange, 552 U.S. at 449. Thus, if a statute is constitutional as applied to a litigant, he or she lacks standing to assert a facial constitutional challenge to it, and the statute is not facially unconstitutional because it has at least one constitutional application.

We begin by determining whether Toghill meets the first element that must be shown to raise a claim of facial unconstitutionality, that is, that the statute is unconstitutional as applied to him. Toghill alleges that enforcement of Code § 18.2-361(A) is unconstitutional as applied to him because enforcement of that criminal statute infringes upon his substantive due process rights articulated by the Supreme Court in Lawrence.

In Lawrence, the Supreme Court of the United States invalidated the convictions of two men observed engaging in

9

anal sex in a private residence. 539 U.S. at 562-63, 579. A Texas statute made it illegal for two people of the same sex to engage in such "deviate sexual intercourse." Id. at 563.

In deciding Lawrence, the Supreme Court overturned its precedent in Bowers v. Hardwick, 478 U.S. 186 (1986), which had stated that a Georgia law that prohibited sodomy was not unconstitutional as applied to a male engaged in sodomy with another male in private because there was no fundamental right for homosexuals to engage in sodomy. Lawrence, 539 U.S. at 566-67, 577-78. The Court in Lawrence discussed how, in Bowers, it had not "appreciate[d] the extent of the liberty at stake" because penalizing such homosexual sodomy would impact "the most private human conduct, sexual behavior, and in the most private of places, the home." Id. at 567. The Court cautioned that a State cannot "define the meaning" of a homosexual relationship or "set its boundaries absent injury to a person or abuse of an institution the law protects." Id. It stated: "[A]dults may choose to enter upon this relationship in the confines of their homes and their own private lives and still retain their dignity as free persons." Id.

The Supreme Court held that the Texas statute violated the Due Process Clause because it regulated the private, non-commercial and consensual sexual conduct of adults and

furthered no legitimate state interest.  Id. at 578.  However,
the Court in Lawrence was clear that

> [t]he present case does not involve minors.  It does
> not involve persons who might be injured or coerced
> or who are situated in relationships where consent
> might not easily be refused.  It does not involve
> public conduct or prostitution.  It does not involve
> whether the government must give formal recognition
> to any relationship that homosexual persons seek to
> enter.  The case does involve two adults who, with
> full and mutual consent from each other, engaged in
> sexual practices common to a homosexual lifestyle.
> The petitioners are entitled to respect for their
> private lives.  The State cannot demean their
> existence or control their destiny by making their
> private sexual conduct a crime.

Id. (emphasis added).

Considering this limiting language, Lawrence simply does
not afford adults with the constitutional right to engage in
sodomy with minors.  We held in McDonald, 274 Va. at 260, 645
S.E.2d at 924, and we reaffirm this day that the Supreme
Court's decision in Lawrence did not prevent Code § 18.2-361(A)
from being constitutional and enforceable as applied to sodomy
between adults and minors.  This Court recognized then and
recognizes in this case that "[t]he Court in Lawrence was
explicit in its declaration of the scope of its opinion: 'The
present case does not involve minors.'"  Id. (citing Lawrence,
539 U.S. at 578).  "Nothing in Lawrence . . . prohibits the
application of the sodomy statute to conduct between adults and

11

minors." Id.  Thus, we hold that Code § 18.2-361(A) was constitutional as applied to Toghill.  Toghill therefore does not have standing to successfully assert a facial constitutional challenge to Code § 18.2-361(A).

There is no Supreme Court precedent to support a ruling that Code § 18.2-361(A) is unconstitutional on its face.  It is claimed that the Supreme Court in Lawrence signaled that sodomy statutes were facially unconstitutional because it overturned Bowers, which involved a facial challenge to a Georgia statute criminalizing all sodomy.  This is factually incorrect.  Bowers did not involve a facial challenge to a Georgia statute, but rather the issue of whether the federal Constitution confers fundamental rights upon homosexuals to engage in sodomy.  478 U.S. at 188 n.2, 190.  In fact, the majority stated in footnote 2 that "[t]he only claim properly before the Court is Hardwick's challenge to the Georgia statute as applied to consensual homosexual sodomy.  We express no opinion on the constitutionality of the Georgia statute as applied to other acts of sodomy."  Id. at 188 n.2.  Thus, the fact that the Supreme Court's decision in Bowers was overruled in Lawrence is not helpful in discerning whether a particular state statute is unconstitutional on its face.[4]

---

[4] We concur with the sentiment expressed in Judge Diaz's dissent to the Moose decision that although the Court in

In *Lawrence* itself, the Supreme Court did not explicitly indicate whether it was concerned with a facial, as opposed to an as-applied challenge to the statute at issue in the case. However, the *Lawrence* opinion clearly states that individuals are entitled to respect for their private lives such that adults are entitled to engage in private, consensual, noncommercial sexual conduct without intervention of the government. 539 U.S. at 578.

We noted in *Martin v. Ziherl*, 269 Va. 35, 42, 607 S.E.2d 367, 370-71 (2005), that the Virginia statute criminalizing intercourse between unmarried persons improperly abridged a personal relationship that was within the liberty interest of persons to choose. However, unlike *Martin*, which involved sex between consenting adults, the instant case involves oral sex with a minor which is not "within the liberty interests of persons to choose," as specifically stated by the Supreme Court in *Lawrence*. 539 U.S. at 567, 578; *see also Martin*, 269 Va. at 43, 607 S.E.2d at 371 (emphasizing that the case did "not involve minors, non-consensual activity, prostitution or public activity[,]" which are activities that *Lawrence* indicated could be regulated by the state).

---

*Lawrence* overturned *Bowers*, to infer that *Lawrence* intended sodomy statutes to be facially invalid from this factor would be a logical "bridge too far." 710 F.3d at 169 (Diaz, J., dissenting).

13

Toghill, an adult, was charged with soliciting oral sex from a person he believed was a minor in violation of Code § 18.2-374.3(C) because oral sex is prohibited by Code § 18.2-361(A), a generally-worded anti-sodomy statute. Because he solicited sodomy with a person whom he thought was a minor, Toghill does not have standing to assert a facial challenge to the anti-sodomy provisions of Code § 18.2-361(A) because enforcement of the sodomy prohibition law is constitutional as applied to him in this instance. There are constitutional applications of Code § 18.2-361(A), and Toghill's facial challenge to the statute therefore fails.

A facially unconstitutional statute is invalid. However, courts can also order statutes that are unconstitutional only in certain applications to be totally invalidated in rare circumstances. Thus, even though Code § 18.2-361(A) is not unconstitutional on its face, that is not dispositive of the issue of whether it was error to rule that the statute was enforceable.

The Supreme Court's decision in Ayotte, 546 U.S. at 328-32, recognized that in rare circumstances, it may be proper to totally invalidate a statute even if it is merely unconstitutional as applied in some circumstances and constitutional in others. Ayotte does not condemn the failure to totally invalidate a statute that is unconstitutional as

14

applied in certain instances.  Id. at 328-29.  Instead, it provides an analytical framework for discerning the proper remedy to be applied when a statute is unconstitutional as applied.

Ayotte involved a New Hampshire abortion law that prohibited physicians from performing an abortion on a pregnant minor without notifying her parents in advance, a restriction allowed by the Constitution.  Id. at 323-24, 326-27.  However, the Supreme Court held that the law failed to provide constitutionally sufficient access to abortions necessary to protect the mother's life or health.  Id. at 326-28.  The Supreme Court remanded the case to the lower courts for them to determine whether the proper remedy was for them to forbid the unconstitutional applications of the statute only or to invalidate the statute facially.  546 U.S. at 331-32.

The Supreme Court instructed the lower courts that

> [g]enerally speaking, when confronting a
> constitutional flaw in a statute, we try to limit the
> solution to the problem.  We prefer, for example, to
> enjoin only the unconstitutional applications of the
> statute while leaving other applications in force
> . . . or to sever its problematic portions while
> leaving the remainder intact[.]

Id. at 328.

The Supreme Court in Ayotte provided that three interrelated principles should inform a court's approach to remedies when confronting a statute that may be applied in a

15

manner that violates constitutional rights. Id. at 329-30. First, it affirmed again that the "'normal rule' is that 'partial, rather than facial, invalidation is the required course,' such that a 'statute may . . . be declared invalid to the extent that it reaches too far, but otherwise left intact.'" Id. at 329 (citing Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 504 (1985); Tennessee v. Garner, 471 U.S. 1 (1985); United States v. Grace, 461 U.S. 171, 180-83 (1983)). The Court noted that "we try not to nullify more of a legislature's work than is necessary, for we know that '[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people.'" Id. (quoting Regan v. Time, Inc., 468 U.S. 641, 652 (1984) (plurality opinion)).

Second, the Supreme Court instructed that a court should not supplant the legislature by "rewriting state law to conform it to constitutional requirements even as we strive to salvage it." Id. at 329 (alteration and internal quotation marks omitted). The Court noted that "[o]ur ability to devise a judicial remedy that does not entail quintessentially legislative work often depends on how clearly we have already articulated the background constitutional rules at issue and how easily we can articulate the remedy." Id. The Court cautioned that "making distinctions in a murky constitutional context, or where line-drawing is inherently complex, may call

16

for a 'far more serious invasion of the legislative domain' than we ought to undertake."  Id. at 330 (quoting United States v. Treasury Employees, 513 U.S. 454, 479 n.26 (1995)).

Third, the Supreme Court emphasized that "the touchstone for any decision is legislative intent, for a court cannot 'use its remedial powers to circumvent the intent of the legislature.'"  Id. (quoting Califano v. Westcott, 443 U.S. 76, 94 (1979)(Powell, J., concurring in part and dissenting in part); Dorchy v. Kansas, 264 U.S. 286, 289-90 (1924)).  The Court stated that "after finding an application or portion of a statute unconstitutional," courts must "ask: Would the legislature have preferred what is left of its statute to no statute at all?"  Id.  Moreover, the Court cautioned against allowing legislatures to rely on a court's intervention by crafting a statute that applies broadly and having the courts carve out provisions from it that are unconstitutional.  Id.

In fashioning a remedy in this instance, we will attempt to nullify no more of the legislature's work than is necessary. This is consistent with Virginia jurisprudence, which requires that we "'construe the plain language of a statute to have limited application if such a construction will tailor the statute to a constitutional fit.'"  McDonald, 274 Va. at 260 (quoting Virginia Soc. for Human Life v. Caldwell, 256 Va. 151, 157 n.3, 500 S.E.2d 814, 817 n.3 (1998)).  The "as-applied"

17

remedy is simple to fashion in this case, given the Lawrence decision's articulation of the contexts in which a state can criminalize sodomy.  See Lawrence, 539 U.S. at 578.  In accordance with the Lawrence decision, Code § 18.2-361(A) cannot criminalize private, noncommercial sodomy between consenting adults, but it can continue to regulate other forms of sodomy, such as sodomy involving children, forcible sodomy, prostitution involving sodomy and sodomy in public.  The easy to articulate remedy is that Code § 18.2-361(A) is invalid to the extent its provisions apply to private, noncommercial and consensual sodomy involving only adults.

It should be noted that this is not the instance about which the Supreme Court cautioned in Ayotte, in which a legislature drafts a broad statute and relies upon the courts for intervention.  Rather, this is an instance when a statute was considered constitutional when it was passed, but certain applications of the statute were declared unconstitutional by a subsequent Supreme Court opinion.  The intent of the legislature was to prohibit all sodomy, which it could do constitutionally at the time Code § 18.2-361(A) was originally passed by the legislature.

Although the General Assembly removed certain anti-sodomy language from Code § 18.2-361(A) in 2014, in the same act it amended other statutes to ensure that sodomy with a minor or

18

solicitation of sodomy with a minor would be a crime.  2014 Acts ch. 794.  Currently, the Code of Virginia criminalizes sodomy involving adults and minors in numerous ways and thus shows clearly that our upholding convictions under the instant version of Code § 18.2-361(A) for offenses involving children is consistent with legislative intent.  See, e.g., Code § 18.2-63 (stating that an adult who engages in "sexual intercourse, cunnilingus, fellatio, anilingus, anal intercourse, and animate and inanimate object sexual penetration" with a minor between 13 years of age and 15 years of age is guilty of a Class 4 felony); Code § 18.2-370 (stating that an adult "who, with lascivious intent, knowingly and intentionally" "propose[s]" to a child under the age of 15 "the performance of an act of sexual intercourse, anal intercourse, cunnilingus, fellatio, or anilingus" is guilty of a Class 5 felony); Code § 18.2-371 (stating that any adult who "engages in consensual sexual intercourse or anal intercourse with or performs cunnilingus, fellatio, or anilingus upon or by a child 15 or older not his spouse, child, or grandchild is guilty of a Class 1 misdemeanor"); Code § 18.2-374.3 (stating that it is a Class 5 felony for an adult to use a communications system to "[p]ropose to [a minor under 15 years of age] the performance of an act of sexual intercourse, anal intercourse, cunnilingus, fellatio, or anilingus").  Moreover, the Code criminalizes

19

prostitution involving sodomy, Code § 18.2-346, sodomy in public, Code § 18.2-387, and forcible sodomy, Code § 18.2-67.1(A).  Given the General Assembly's decision to criminalize sodomy in these contexts, upholding the portions of Code § 18.2-361(A) that are constitutional clearly follows legislative intent.

After consideration of the factors articulated by the Supreme Court in Ayotte, we hold that it is proper to apply the "normal rule" by prohibiting those applications of Code § 18.2-361(A) that are unconstitutional and leaving the constitutional applications of Code § 18.2-361(A) to be enforced.  This remedy is an exercise in judicial restraint because it allows the constitutional portions of a statute passed by the General Assembly to remain in effect and reflects the legislative preferences exhibited by the Code and the subsequent acts of the General Assembly.

### Conclusion

Accordingly, for the reasons stated, we will affirm the judgment of the Court of Appeals.

Affirmed.


JUSTICE MIMS, concurring.

I concur with the majority's conclusion that former Code § 18.2-361(A) was not facially unconstitutional and was

20

enforceable under the facts of this case.  I write separately because I do not agree that the Court should reach this issue (raised for the first time on appeal) under the good cause exception provided by Rule 5:25.  I also write to explain why I find the Fourth Circuit panel majority's opinion in <u>MacDonald v. Moose</u>, 710 F.3d 154 (4th Cir. 2013), unpersuasive.

Toghill raised the issue presented here for the first time to the Court of Appeals.  He invited that court to reach it under the ends of justice exception provided by Rule 5A:18.  The court declined his invitation.  Rather, it addressed the issue on the ground that it raised a question of subject matter jurisdiction.[1]  <u>Toghill v. Commonwealth</u>, Record No. 2230-12-2, slip op. at 3-4 (February 11, 2014) (unpublished).  The Court of Appeals then determined that former Code § 18.2-361(A) was not facially unconstitutional and declined to "disturb the ruling of the trial court."  <u>Id.</u> at 4.

Unlike the Court of Appeals, the majority opinion finds good cause to reach the issue under Rule 5:25 because the Fourth Circuit decided <u>Moose</u> between the time of Toghill's trial and his appeal.  It creates the precedent that an appellant may raise an issue for the first time on appeal

---

[1] <u>See</u> <u>Saunders v. Commonwealth</u>, 62 Va. App. 793, 803, 753 S.E.2d 602, 607 (2014) (opining that courts lack jurisdiction to enter a criminal judgment upon a statute that is facially unconstitutional).

simply because a federal court addressed it in a non-binding opinion after the state court has concluded its proceedings, even though the appellant could have raised the issue there. I believe that such a precedent weakens Rule 5:25.

Rule 5:25 provides that "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."

> The purpose of the rule is to "afford the trial court an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals." Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991). . . . Thus, the provisions of Rule 5:25 "protect the trial court from appeals based upon undisclosed grounds." Fisher v. Commonwealth, 236 Va. 403, 414, 374 S.E.2d 46, 52 (1988). . . . The rule is not intended . . . "to obstruct petitioners in their efforts to secure writs of error, or appeals, but to put the record in such shape that the case may be heard in this Court upon the same record upon which it was heard in the trial court." Kercher v. Richmond, Fredericksburg & Potomac R.R. Co., 150 Va. 108, 115, 142 S.E. 393, 395 (1928).

> In analyzing whether a litigant has satisfied the requirements of Rule 5:25, this Court has consistently focused on whether the trial court had the opportunity to rule intelligently on the issue. "If [the] opportunity [to address an issue] is not presented to the trial court, there is no ruling by the trial court on the issue,

> and thus no basis for review or action by this Court on appeal." Riverside Hosp., Inc. v. Johnson, 272 Va. 518, 526, 636 S.E.2d 416, 420 (2006). An appellate court can only "determine whether or not the rulings and judgment of the court below . . . were correct." Jackson [v. Chesapeake & Ohio Ry. Co.], 179 Va. [642,] 651, 20 S.E.2d [489,] 493 [(1942)].

Scialdone v. Commonwealth, 279 Va. 422, 437, 689 S.E.2d 716, 724 (2010) (internal alterations omitted).

Toghill could have presented the question at issue in this appeal to the circuit court for its consideration. By declining to do so, he prevented the circuit court from reaching its own conclusion on the matter. We and the Court of Appeals were able to consider the question because of its jurisdictional implications. It is not necessary to open the door for parties in future cases to take advantage of the good cause exception to Rule 5:25 simply because a federal court has decided an issue that was not submitted for the state court's consideration. We have previously held that the exception does not apply when an appellant fails to raise an argument to a circuit court for its consideration simply because the law, as it stood when the case was pending there, was unfavorable to the argument. Gheorghiu v. Commonwealth, 280 Va. 678, 688-89, 701 S.E.2d 407, 413 (2010). The majority opinion does not distinguish that case.

23

With regard to the persuasive value of the Fourth Circuit panel majority's opinion in Moose, I agree with the majority's conclusion that it is wrongly decided insofar as it declares former Code § 18.2-361(A) to be facially unconstitutional. However, I also observe that the Fourth Circuit was in no position to rule on that question at all. It arose there upon a petition for review under 28 U.S.C. § 2254, following the petitioner's unsuccessful efforts on appellate and state habeas review. 710 F.3d at 156.

As capably explained by Judge Diaz in his dissenting opinion,

> the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), [Pub. L. 104-132, §104, 110 Stat. 1214, 1218-19 (1996)], "limits the federal courts' power to issue a writ to exceptional circumstances" where the state court decision on the merits "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States.'" Richardson v. Branker, 668 F.3d 128, 138 (4th Cir. 2012) (quoting 28 U.S.C § 2254(d)).

Id. at 167 (Diaz, J., dissenting) (alteration omitted).

Although the panel majority recited the relevant statutory provision, it undertook no AEDPA analysis of either our opinion deciding the petitioner's direct appeal, McDonald v. Commonwealth, 274 Va. 249, 645 S.E.2d 918 (2007), or Martin v.

24

Ziherl, 269 Va. 35, 607 S.E.2d 367 (2005), on which it was principally grounded.  It did not conclude, as AEDPA required, that our decision in either case "was contrary to, or an unreasonable application of" Lawrence v. Texas, 539 U.S. 558 (2003), or any other decision of the Supreme Court of the United States.

Consequently, the Fourth Circuit panel majority decided an issue without authority.[2]  Fundamental principles of comity and federalism are offended when a federal court's reach exceeds its statutory grasp.

Accordingly, I find the Fourth Circuit panel majority's opinion wholly unpersuasive and reject its application in Virginia courts.


JUSTICE McCLANAHAN, concurring.

On appeal to this Court, Toghill challenges Code § 18.2-361(A) as unconstitutional.  Toghill did not, however, challenge the constitutionality of Code § 18.2-361(A) at any point during the circuit court proceedings.  Faced with exactly

---

[2] While the United States Supreme Court declined to review the Fourth Circuit's decision, Moose v. MacDonald, U.S., 134 S.Ct. 200 (2013), "the denial of a writ of certiorari imports no expression of opinion upon the merits of the case.  The variety of considerations that underlie denials of the writ counsels against according denials of certiorari any precedential value."  Teague v. Lane, 489 U.S. 288, 296 (1989) (internal citations, quotation marks, and alteration omitted).

this circumstance in McDonald v. Commonwealth, 274 Va. 249, 645 S.E.2d 918 (2007), this Court held that Rule 5:25 barred consideration of the petitioner's constitutional challenge on appeal. Id. at 255, 645 S.E.2d at 921; Riner v. Commonwealth, 268 Va. 296, 325 n.11, 601 S.E.2d 555, 571 n.11 (2004) ("Under this Court's contemporaneous objection rule, see Rule 5:25, we do not consider a constitutional argument raised for the first time on appeal.") That the Fourth Circuit issued a non-binding opinion that Code § 18.2-361(A) is unconstitutional after the circuit court proceedings concluded does not excuse Toghill's failure to himself challenge the constitutionality of the statute during the proceedings. Commonwealth v. Jerman, 263 Va. 88, 94, 556 S.E.2d 754, 757 (2002); McGhee v. Commonwealth, 280 Va. 620, 625, 701 S.E.2d 58, 60-61 (2010). Even if Toghill believed a constitutional challenge would fail given the authority available at that time, "[t]he perceived futility of an [argument] does not excuse a defendant's procedural default at trial." Id., 701 S.E.2d at 61. Consistent with our precedent, I would hold that Rule 5:25 bars the Court's consideration of Toghill's appeal. McDonald, 274 Va. at 255, 645 S.E.2d at 921; id.; see also Brandon v. Cox, 284 Va. 251, 254-56, 736 S.E.2d 695, 696-97 (2012); Edmonds v. Coldwell Banker Residential Real Estate Servs., Inc., 237 Va. 428, 433, 377 S.E.2d 443, 446 (1989).

Rule 5:25 does provide an exception for good cause, but Toghill has not at any point attempted to even allege good cause. The majority asserts it may raise sua sponte the good cause exception, citing as support the Court's invocation sua sponte of the ends of justice exception. While "this Court [is able] to attain the ends of justice," the Court may apply the good cause exception only "for good cause shown" by a party, not for good cause discovered by this Court. Rule 5:25 (emphasis added); see Rule 5:9(d) (distinguishing between a "motion for good cause shown" and a "sua sponte order of this Court").[*] Indeed, this Court has declined to sua sponte invoke the good cause exception where the law changed under binding decisions by this Court and by the Supreme Court of the United States, in stark contrast to the merely persuasive Fourth Circuit opinion. Jerman, 263 Va. at 94, 556 S.E.2d at 757; McGhee, 280 Va. at 625, 701 S.E.2d at 60-61. And to be sure, the Fourth Circuit's issuance of a non-binding opinion cannot, and did not, carry Toghill's burden to show good cause to this Court.

Finding the appeal barred under 5:25, I would affirm the judgment of the Court of Appeals.

---

[*] This is analogous to, for example, a show cause order, which creates a burden on the party to whom the order is directed to present the Court with evidence establishing good cause. See, e.g., Rule 5:1(A) (show cause order issued "to counsel or a party not represented by an attorney").

27